UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**PINNACLE TOWERS LLC and
CROWN CASTLE SOUTH, LLC,**

    **Plaintiffs,**

v.                                                                        Case No: 5:15-cv-81-Oc-34PRL

**AIRPOWERED, LLC**

    **Defendant.**

_____

### REPORT AND RECOMMENDATION[1]

Plaintiffs Pinnacle Towers, LLC and Crown Castle, LLC seek an entry of default judgment against Defendant airPowered, LLC. (Doc. 14). Based on a review of the record and for the reasons set forth below, I submit that Plaintiffs are entitled to default judgment.

**I.    BACKGROUND[2]**

This is a breach of contract action arising out of five separate licensing agreements (the "Agreements") between Plaintiffs Pinnacle Towers, LLC ("Pinnacle") and Crown Castle South, LLC ("Crown Castle") and Defendant airPowered, LLC ("airPowered"). Pursuant to these Agreements, Plaintiffs granted Defendant fifteen-year licenses to install, operate, and maintain communications equipment at five different telecommunications facilities (i.e., cell-phone

___

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.
[2] The background "facts" are taken from the Second Amended Complaint. (Doc. 8).

towers), all of which are located in the Middle District of Florida. In return for the licenses, Defendant was obligated to pay monthly licensing payments.

According to Plaintiffs, after several years of operating in accordance with the Agreements, Defendant stopped paying the monthly licensing payments. Under the Agreements, Defendant's default entitled Plaintiffs to accelerate and collect all of the remaining payments due, along with monthly interest of one and one-half percent.

Plaintiffs then filed suit against Defendant on February 18, 2015 and alleged five breach of contracts claims (one for each of the Agreements), along with alternative claims for unjust enrichment and for breach of good faith and fair dealing. (Doc. 1). Plaintiffs perfected service of process on February 25, 2015. (Doc. 11, Ex. 1). Subsequently, Plaintiffs twice amended their pleading, but both amendments did not raise any new claims for relief. The Second Amended Complaint (the "Complaint") is now the operative pleading. (Doc. 8). Despite being properly served,[3] Defendant failed to file a responsive pleading, and the clerk entered default on April 27, 2015. (Doc. 12). Plaintiffs then filed the instant motion for final default judgment on their five breach of contract claims, and the motion was referred to me.[4] (Doc. 14).

Plaintiffs attached, to their Complaint and motion for default judgment, redacted copies of the Agreements. Because the Agreements are central to the resolution of the instant motion, I

---

[3] Plaintiffs properly served Defendant, under Federal Rule of Civil Procedure 5, with the Complaint by certified mail (Doc. 11, Ex. 2). *See PNC Equip. Fin., LLC v. IKZ, Inc.*, No. 2:13-CV-763-FTM-29CM, 2014 WL 1328506, at *2 (M.D. Fla. Apr. 2, 2014).

[4] Plaintiffs have also moved for default judgment on their alternative claim for breach of good faith and fair dealing. (Doc. 14, p. 9). Because Plaintiffs succeed on their breach of contract claims, their alternative claim is superfluous. *Consol. Container Co. LP v. Package Supply & Equip. Co.*, No. CIV.A.1:09CV01478JOF, 2009 WL 3365949, at *1 (N.D. Ga. Oct. 19, 2009) (noting that the plaintiff's alternative claim "is superfluous because [the defendant's] liability for breach of contract has been established, and [the plaintiff] cannot recover twice for the same wrong."); *see Wells Fargo Bank v. S. Boys Inv. Grp., LLC*, No. 3:10-CV-609-J-37MCR, 2011 WL 2446594, at *1 n. 2 (M.D. Fla. May 26, 2011) *report and recommendation adopted sub nom. Wells Fargo Bank, Nat. Ass'n v. S. Boys Inv. Grp., LLC*, No. 3:10-CV-609-J-37MCR, 2011 WL 2436062 (M.D. Fla. June 15, 2011).

ordered Plaintiffs to show cause why un-redacted copies should be not be filed on the docket. (Doc. 17). In response, Plaintiffs submitted un-redacted copies of the Agreements for the Court's *in camera* review (Doc. 19, Ex. A–E), as well as a written response to the order to show cause (Doc. 18), which I construed as a motion to file the un-redacted copies under seal. Based upon the proprietary information contained in the Agreements, I granted the motion to seal and ordered that the copies of the Agreements submitted for *in camera* review remain under seal until further order. (Doc. 21). In addition, because it was unclear how they had calculated the amount of damages they requested in the instant motion, I ordered Plaintiffs to clarify the basis for their requested damages. In response, Plaintiffs filed under seal a damages affidavit (the "Affidavit") along with a supporting spreadsheet. (Doc. 24).

In their Affidavit, Plaintiffs had still failed to establish a legitimate basis for their damages. Accordingly, and out of an abundance of caution, I gave Plaintiffs one final chance to further clarify their claimed amounts. (Doc. 25). In their final response, Plaintiffs finally provided a legitimate basis for their damages (Doc. 26); thus, I submit that they are entitled to default judgment in the amounts set forth below.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 55, a two-part process exists for obtaining a default judgment. First, the party must obtain an entry of default from the clerk of court. Fed. R. Civ. P. 55(a). Second, "the party must apply to the court for default judgment." Fed. R. Civ. P. 55(b). Although "a default is not treated as an absolute confession by the defendant of his [or her] liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact." *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. App'x 860, 863 (11th Cir. 2007) (internal quotation marks omitted). Thus, the court "must ensure that the well-pleaded

allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.* Additionally, before entering a default judgment, a court has "an obligation to assure there is a legitimate basis for any damage award it enters." *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2007).

Further, although "well-pleaded facts in the Complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records America, Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 n. 5 (S.D. Ala. 2007). Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.3d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for the award). Finally, under Rule 55(b) the court has discretion to hold an evidentiary hearing to determine appropriate damages, but it is not required to, particularly where there is sufficient evidence in the record. *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 Fed. App'x. 908, 911–12 (11th Cir. 2011). Here, Plaintiffs have established, via the Affidavit and the Agreements, a legitimate basis for the damages due to be awarded.

### III.  DISCUSSION

#### A. Breach of Contract

At issue here are Plaintiffs' claims for breach of contract. To establish a breach of contract claim under Florida law, a plaintiff must prove the following elements: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega*

*v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009).[5]  Additionally, "'in order to maintain an action for breach of contract, a claimant must also prove performance of its obligations under the contract or a legal excuse for its nonperformance.'" *HostLogic Zrt. v. GH Int'l, Inc.*, No. 6:13-CV-982-ORL-36, 2014 WL 2968279, at *7 (M.D. Fla. June 30, 2014) (quoting *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. Dist. Ct. App. 2006).

Here, Plaintiffs allege that five legally binding contracts (the Agreements) exist—two between Pinnacle and Defendant and three between Crown Castle and Defendant. (Doc. 8, ¶¶ 6, 9, 23, 37, 50, 64; 19, Ex. A–E). Second, they allege that Defendant materially breached all five Agreements by ceasing to pay the monthly licensing payments.[6] (Doc. 8, ¶¶ 7, 16, 32, 45, 59, 72). Finally, they allege that they have suffered damages, namely the loss of the contractually due payments and interest. (Doc. 8, ¶¶ 7, 21, 35, 48, 62, 77). Additionally, Plaintiffs aver that they have performed their obligations under the Agreements. (Doc. 8, ¶¶ 20, 34, 47, 61, 74). These allegations, which are accepted as true for purposes of the instant motion, are sufficient to establish Plaintiffs' claims for breach of contract in Counts I–V. Now, the Court turns to the amount of damages due to be awarded in each of those Counts.

**B. Damages**

In this case, the amount of damages awarded is determined by the Agreements. Each Agreement provides for a fifteen-year licensing term (the "Term"), with each Term beginning on the commencement date (the "Term Commencement Date"). Under each Agreement, Defendant is required to pay monthly licensing payments (due the first day of each month) from the Term

---

[5] Each Agreement states that the "laws of the State where the Site is located . . . shall govern" the Agreement. (*See, e.g.*, Doc. 19, Ex. A, ¶ 15). Thus, as all the sites are located in the Middle District of Florida, Florida law applies to each Agreement.

[6] In addition to the missed payments, Crown Castle alleges that Defendant also breached the Agreement at issue in Count V by accessing, without prior notification, the licensed site and damaging the site. (Doc. 8, ¶¶ 76–77; 14, p. 8).

Commencement Date until the Term's end. Each Agreement specifies the monthly payment amount due during the first year of its Term. (*See, e.g.*, Doc. 19, Ex. A, ¶ 5.1.). Then, under each Agreement, with the one exception of Count IV, the monthly payment amounts increase by three percent each year—these increases occur on each anniversary of the Term Commencement Date (the "Adjustment Dates").[7] Finally, each Agreement contains an acceleration clause allowing Plaintiffs to collect all of the Term's remaining payments, upon Defendant's default. (Doc. 19, Ex. A at ¶ 13; B at ¶ 13; C at ¶ 13; D at ¶ 13; E at ¶ 13).

In addition to the amount of payments due (the "Delinquent Amount"), the Agreements provide that the Delinquent Amount under each Count shall bear interest at one and one-half percent per month (the "Contractual Interest"). (Doc. 19, Ex. A at ¶ 13; B at ¶ 13; C at ¶ 13; D at ¶ 13; E at ¶ 13). Plaintiffs have chosen a seven-month accrual period, although they concede that they are entitled to a longer period. (Doc. 26, p. 3). Applying the principles discussed, I will now address each Count.

### 1. Count I

As alleged in the Complaint, Pinnacle and Defendant entered an initial agreement on May 29, 2008 for Defendant to install, operate and maintain communications equipment at a telecommunications facility in Orlando, Florida at business unit number 870178. The contract Term Commencement Date was June 1, 2008 and the Term is due to expire on May 31, 2023. The payment amount for the first year of the Term was $1,075.00, the payment amounts increased by three percent each year, and an amended agreement effective June 17, 2009 increased the payment amount by $200.00.[8] Defendant made its last payment on May 10, 2013—Defendant

---

[7] The Agreement at issue in Count IV, instead of using this three percent adjustment rate, uses a formula based on the Consumer Price Index. *See infra* sub-section III.B.4.

[8] The parties amended three of the Agreements, including this Agreement, to increase the payment amounts. (Doc. 19, Ex. A1, B1, D1).

defaulted on June 1, 2013. The following table summarizes the amount of damages due under this Count.

| COUNT I | | |
|---|---|---|
| Year | Payment Amounts | Delinquent Amounts |
| 6/1/2008-5/31/2009 | $1,075.00 (The payment amounts increase three percent each year.) | |
| 6/1/2009-6/16/2009 | $1,107.25[9] | |
| 6/17/2009-5/31/2010 | $1,307.25 (The Agreement was amended on June 17, 2009, which increased the monthly payment amount by $200.) | |
| 6/1/2010-5/31/2011 | $1,346.47 | |
| 6/1/2011-5/31/2012 | $1,386.86 | |
| 6/1/2012-5/31/2013 | $1,428.47 | (Defendant's last payment occurred on May 10, 2013.) |
| 6/1/2013-5/31/2014 | $1,471.32 | $17,655.86 |
| 6/1/2014-5/31/2015 | $1,515.46 | $18,185.53 |
| 6/1/2015-5/31/2016 | $1,560.92 | $18,731.10 |
| 6/1/2016-5/31/2017 | $1,607.75 | $19,293.03 |
| 6/1/2017-5/31/2018 | $1,655.99 | $19,871.82 |
| 6/1/2018-5/31/2019 | $1,705.66 | $20,467.98 |
| 6/1/2019-5/31/2020 | $1,756.83 | $21,082.02 |
| 6/1/2020-5/31/2021 | $1,809.54 | $21,714.48 |
| 6/1/2021-5/31/2022 | $1,863.83 | $22,365.91 |
| 6/1/2022-5/31/2023 | $1,919.74 | $23,036.89 |
| Totals | $280,733.17 | $202,404.61 |
| | | |
| Total Contractual Interest Due | | $21,252.48[10] |
| | | |
| Total Amount Due | | $223,657.09 |

Accordingly, Pinnacle has provided a legitimate basis for damages under this Count in the amount of $223,657.09 (a Delinquent Amount of $202,404.61, plus Contractual Interest of $21,252.48).

---

[9] To determine the payment amount for any given year of the Term, multiply three percent by the previous payment amount and then add that sum to the previous amount. For example, to determine the payment amount for the second year of this Term, multiply three percent by $1,075.00 (the previous payment amount) and then add that sum to $1,075.00 (($1075.00 x 3%) + $1,075.00 = $1,107.25, which is the new payment amount). This formula was used for the yearly adjustments in Counts I, II, III, and V.

[10] To determine the Contractual Interest due under this Count, the Delinquent Amount is multiplied by the interest rate of one and one-half percent and the seven-month accrual period (($202,404.61 x 1.5% x 7 months = $21,252.48, which is the Contractual Interest due). This formula is used for all of the Counts at issue here.

### 2. Count II

As alleged in the Complaint, Crown Castle and Defendant entered an initial agreement on June 16, 2008 for Defendant to install, operate and maintain communications equipment at a telecommunications facility in Casselberry, Florida at business unit number 811870. The Term Commencement Date was August 1, 2008 and the Term is due to expire on July 31, 2023. The payment amount for the first year of the Term was $1,150.00, the payment amounts increased by three percent each year, and an amended agreement effective September 23, 2009 increased the payment amount by $200.00. Defendant made its last payment on November 7, 2011—Defendant defaulted on December 1, 2011. The following table summarizes the amount of damages due under this Count.

| COUNT II | | |
|---|---|---|
| Year | Payment Amounts | Delinquent Amounts |
| 8/1/2008-7/31/2009 | $1,150.00 (The payment amounts increase three percent each year.) | |
| 8/1/2009-9/22/2009 | $1,184.50 | |
| 9/23/2009-7/31/2010 | $1,384.50 (The Agreement was amended on September 23, 2009, which increased the monthly payment amount by $200.) | |
| 8/1/2010-7/31/2011 | $1,426.04 | |
| 8/1/2011-7/31/2012 | $1,468.82 | $11,750.53 (Defendant's last payment occurred on November 7, 2011. Thus, Defendant missed eight payments this year.) |
| 8/1/2012-7/31/2013 | $1,512.88 | $18,154.57 |
| 8/1/2013-7/31/2014 | $1,558.27 | $18,699.20 |
| 8/1/2014-7/31/2015 | $1,605.01 | $19,260.18 |
| 8/1/2015-7/31/2016 | $1,653.17 | $19,837.98 |
| 8/1/2016-7/31/2017 | $1,702.76 | $20,433.12 |
| 8/1/2017-7/31/2018 | $1,753.84 | $21,046.12 |
| 8/1/2018-7/31/2019 | $1,806.46 | $21,677.50 |
| 8/1/2019-7/31/2020 | $1,860.65 | $22,327.83 |
| 8/1/2020-7/31/2021 | $1,916.47 | $22,997.66 |
| 8/1/2021-7/31/2022 | $1,973.97 | $23,687.59 |
| 8/1/2022-7/31/2023 | $2,033.18 | $24,398.22 |
| Total Amount | $297,272.19 | $244,270.51 |
| | | |
| Total Contractual Interest Due | | $25,648.40 |
| | | |
| Total Amount Due | | $269,918.91 |

Accordingly, Crown Castle has provided a legitimate basis for damages under this Count in the amount of $269,918.91 (a Delinquent Amount of $244,270.51, plus Contractual Interest of $25,648.40).

### 3. Count III

As alleged in the Complaint, Pinnacle and Defendant entered an agreement on August 4, 2008, for Defendant to install, operate and maintain communications equipment at a telecommunications facility in Winter Garden, Florida at business unit number 870329. The Term Commencement Date was October 1, 2008 and the Term is due to expire on September 30, 2023. The payment amount for the first year of the Term was $1,275.00 and the payment amounts increased by three percent each year. Defendant made its last payment on May 10, 2013— Defendant defaulted on June 1, 2013. The following table summarizes the amount of damages due under this Count.

| COUNT III | | |
|---|---|---|
| Year | Payment Amounts | Delinquent Amounts |
| 10/1/08-9/30/09 | $1,275.00 (The payment amounts increase three percent each year.) | |
| 10/1/09-9/30/10 | $1,313.25 | |
| 10/1/10-9/30/11 | $1,352.65 | |
| 10/1/11-9/30/12 | $1,393.23 | |
| 10/1/12-9/30/13 | $1,435.02 | $5,740.09 (Defendant's last payment occurred on May 10, 2013. Thus, Defendant missed four payments this year.) |
| 10/1/13-9/30/14 | $1,478.07 | $17,736.89 |
| 10/1/14-9/30/15 | $1,522.42 | $18,269.00 |
| 10/1/15-9/30/16 | $1,568.09 | $18,817.07 |
| 10/1/16-9/30/17 | $1,615.13 | $19,381.58 |
| 10/1/17-9/30/18 | $1,663.59 | $19,963.03 |
| 10/1/18-9/30/19 | $1,713.49 | $20,561.92 |
| 10/1/19-9/30/20 | $1,764.90 | $21,178.78 |
| 10/1/20-9/30/21 | $1,817.85 | $21,814.14 |
| 10/1/21-9/30/22 | $1,872.38 | $22,468.57 |
| 10/1/22-9/30/23 | $1,928.55 | $23,142.62 |
| Total Amount | $284,563.38 | $209,073.70 |
| | | |
| Total Contractual Interest Due | | $21,952.74 |

|  |  |  |
|---|---|---|
| Total Amount Due |  | $231,026.44 |

Accordingly, Pinnacle has provided a legitimate basis for damages under this Count in the amount of $231,026.44 (a Delinquent Amount of $209,073.70, plus Contractual Interest of $21,952.74).

### 4. Count IV

As alleged in the Complaint, Crown Castle and Defendant entered an initial agreement on June 3, 2008 for Defendant to install, operate and maintain communications equipment at a telecommunications facility in Orlo Vista, Florida at business unit number 812778. The Term Commencement Date was August 1, 2008 and the Term is due to expire on July 31, 2023. The payment amount for the first year of the Term was $1,000.00, but an amended agreement effective February 1, 2009 increased the payment amount by $300.00. Defendant made its last payment on October 27, 2011—Defendant defaulted on November 1, 2011.

Unlike the other four Agreements, which provide for a three percent annual increase to the payment amounts, this Agreement bases the annual increase to the payment amounts on a formula tied to the Consumer Price Index for Urban Wage Earners and Clerical Workers For All Items (CPIW).[11] (Doc. 19, Ex. D, ¶ 5.2). The formula provides that the payment amounts increase (but never decrease) consistent with the CPIW for the applicable period upon each Adjustment Date.[12] To date, the CPIW is only current through the August 1, 2015 Adjustment Date.

---

[11] The CPIW can be found in the tables provided by the Bureau of Labor and Statistics at http://www.bls.gov/cpi/cpi_dr.htm.

[12] Specifically, the Agreement defines this formula as (IR/IL) times the then-current payment amount where "IR" is defined as the CPIW "for the month which is five (5) months preceding the Adjustment Date" and "IL" is defined as the CPIW "for the month which is seventeen (17) months preceding the Adjustment Date." The formula lacks a percentage sign, and this flaw, if left uncorrected, would result in nonsensical payment amounts (e.g., without the percentage sign, the payment amounts would increase by over one-hundred percent each year from 2010 to 2014). Further, Plaintiffs' damages calculations (as shown in the spreadsheet attached to their Affidavit) are certainly not based on a formula that results in one-hundred percent increases, nor do they contend that the parties intended this result. Thus, applying

Unfortunately, the Agreement is silent on what to do where, as here, the needed CPIW data is unknown.

Based on the formula, the Count cannot decrease any payment amount, but neither can the Court increase a payment amount without the relevant data because, as Crown Castle concedes, any future CPIW is unpredictable (indeed, as shown below, sometimes the CPIW decreases from year to year). Thus, the Court will not adjust any payment amount past August 1, 2015—i.e., the payment amount will remain constant for all years of the Term after 2015.

Despite this Agreement's express terms, Crown Castle asks the Court to apply a flat increase of three percent instead of the formula, because Crown Castle "do[es] not have access to future Consumer Price Indexes." (Doc. 24, ¶ 47). While this approach would be easier, would increase Crown Castle's damages under this Count, and would provide for consistency across the Agreements, the Court cannot ignore the Agreement's express terms. *See Allegheny Cas. Co. v. Archer-W./Demaria Joint Venture III*, No. 8:13-CV-128-SCB-TGW, 2014 WL 4162787, at *22 (M.D. Fla. Aug. 21, 2014). Thus, the Court will use the formula set forth in this Agreement. The following table summarizes the amount of damages due under this Count.

---

common sense, the Court used the formula (IR/IL)% multiplied by the then-current payment amount to determine the adjustments for this Agreement.

| COUNT IV | | | | | | |
|---|---|---|---|---|---|---|
| Year | Payment Amounts | Delinquent Amounts | Adjustment Dates | IR | IL | Adjustment Rate |
| 8/1/2008-1/31/2009 | $1,000.00 | | | | | |
| 2/1/2009-7/31/2009 | $1,300.00 (The Agreement was amended on January 26, 2009 and the amendment was effective on February 1, 2009, which increased the monthly payment amount by $300.) | | | | | |
| 8/1/2009-7/31/2010 | $1,300.00 | | First Adjustment Date (8/1/2009) | 207.218 | 209.147 | There is no adjustment as the CPIW decreased this period. |
| 8/1/2010-7/31/2011 | $1,313.40 | | Second Adjustment Date (8/1/2010) | 213.525 | 207.218 | The adjustment rate is 1.0304365%.[13] |
| 8/1/2011-7/31/2012 | $1,326.93 | $11,942.36 (Defendant's last payment occurred on October 27, 2011. Thus, Defendant missed nine payments during this year.) | Third Adjustment Date (8/1/2011) | 220.024 | 213.525 | The adjustment rate is 1.0304367%. |
| 8/1/2012-7/31/2013 | $1,340.58 | $16,086.93 | Fourth Adjustment Date (8/1/2012) | 226.304 | 220.024 | The adjustment rate is 1.0285423%. |
| 8/1/2013-7/31/2014 | $1,354.16 | $16,249.94 | Fifth Adjustment Date (8/1/2013) | 229.323 | 226.304 | The adjustment rate is 1.0133405%. |
| 8/1/2014-7/31/2015 | $1,367.89 | $16,414.74 | Sixth Adjustment Date (8/1/2014) | 232.560 | 229.323 | The adjustment rate is 1.0141155%. |
| 8/1/2015-7/31/2016 | $1,367.89 | $16,414.74 | Seventh Adjustment Date (8/1/2015) | 231.055 | 232.560 | There is no adjustment as the CPIW decreased this period. |
| 8/1/2016-7/31/2017 | $1,367.89 | $16,414.74 | No further data is available for these Adjustment Dates. | | | |
| 8/1/2017-7/31/2018 | $1,367.89 | $16,414.74 | | | | |
| 8/1/2018-7/31/2019 | $1,367.89 | $16,414.74 | | | | |
| 8/1/2019-7/31/2020 | $1,367.89 | $16,414.74 | | | | |
| 8/1/2020-7/31/2021 | $1,367.89 | $16,414.74 | | | | |
| 8/1/2021-7/31/2022 | $1,367.89 | $16,414.74 | | | | |
| 8/1/2022-7/31/2023 | $1,367.89 | $16,414.74 | | | | |
| Total Amount | $254,953.41 | $194,272.92 | | | | |
| | | | | | | |
| Total Contractual Interest Due | | $20,398.66 | | | | |
| | | | | | | |
| Total Amount Due | | $214,671.58 | | | | |

---

[13] The second Adjustment Date (the Term Commencement Date's second anniversary) for this Agreement is August 1, 2010. Five months before August of 2010 is March of 2010, and seventeen months before August of 2010 is March of 2009. According to the Bureau of Labor and Statistics, the CPIW for March 2010 was 213.525 (the IR) and the CPIW for March of 2009 was 207.218 (the IL). Thus, applying the adjustment formula ((IR/IL)% x the then-current payment amount), ((213.525/207.218)% x $1,300.00) + $1,300.00 = $1,313.40, which is the new payment amount.

Accordingly, Crown Castle has provided a legitimate basis for damages under this Count in the amount of $214,671.58 (a Delinquent Amount of $194,272.92, plus Contractual Interest of $20,398.66).

### 5. Count V

As alleged in the Complaint, Crown Castle and Defendant entered an agreement on September 9, 2008, for Defendant to install, operate and maintain communications equipment at a telecommunications facility in Lake Mira, Florida at business unit number 812453. The alleged Term Commencement Date is August 1, 2008 and the Term is due to expire on July 31, 2023. The payment amount for the first year of the Term was $1,350.00 and the payment amounts increased by three percent each year. Defendant made its last payment on November 7, 2011— Defendant defaulted on December, 1 2011. The following table summarizes the amount of damages due under this Count.

| COUNT V | | |
|---|---|---|
| Year | Payment Amounts | Delinquent Amounts |
| 8/1/2008-7/31/2009 | $1,350.00 (The payment amounts increase three percent each year.) | |
| 8/1/2009-7/31/2010 | $1,390.50 | |
| 8/1/2010-7/31/2011 | $1,432.22 | |
| 8/1/2011-7/31/2012 | $1,475.18 | $11,801.45 (Defendant's last payment occurred on November 7, 2011. Thus, Defendant missed eight payments this year.) |
| 8/1/2012-7/31/2013 | $1,519.44 | $18,233.24 |
| 8/1/2013-7/31/2014 | $1,565.02 | $18,780.24 |
| 8/1/2014-7/31/2015 | $1,611.97 | $19,343.65 |
| 8/1/2015-7/31/2016 | $1,660.33 | $19,923.96 |
| 8/1/2016-7/31/2017 | $1,710.14 | $20,521.68 |
| 8/1/2017-7/31/2018 | $1,761.44 | $21,137.33 |
| 8/1/2018-7/31/2019 | $1,814.29 | $21,771.45 |
| 8/1/2019-7/31/2020 | $1,868.72 | $22,424.59 |
| 8/1/2020-7/31/2021 | $1,924.78 | $23,097.33 |
| 8/1/2021-7/31/2022 | $1,982.52 | $23,790.25 |
| 8/1/2022-7/31/2023 | $2,042.00 | $24,503.95 |
| Total Amount | $301,302.40 | $245,329.10 |
| | | |
| Total Contractual Interest Due | | $25,759.56 |

| Total Amount Due | $271,088.65 |
|---|---|

In addition, Crown Castle alleges that Defendant, in breach of the Agreement at issue in this Count, accessed the Lake Mira site without prior notice to Crown Castle, causing damage to the site. (Doc. 8, ¶¶ 76–77). Under paragraph 3.3 of the Agreement, Defendant could not access the site without prior notification to Crown Castle's "District Manager (or other designated person)" unless an emergency occurred. (Doc. 19, Ex. E, ¶ 3.3). Although Crown Castle did not specify the damage amount for this breach in the Complaint, Crown Castle has clarified that during Defendant's unauthorized access of the site, Defendant caused $550.00 in property damage when Defendant "created a safety hazard that Crown Castle was forced to remediate." (Doc. 14, p. 8).

Applying the terms of the Agreement and the facts pled, Crown Castle has provided a legitimate basis for damages under this Count in the amount of $271,638.65 (a Delinquent Amount of $245,329.10, plus Contractual Interest of $25,759.56, plus the additional $550.00 in damages).

**IV.   Summary**

In summary, Pinnacle is entitled to default judgment on Counts I and III of the Complaint and has provided a legitimate basis for damages that total $454,683.53 ($223,657.09 for Count I and $231,026.44 for Count III). Additionally, Crown Castle is entitled to default judgment on Counts II, IV, and V of the Complaint and has provided a legitimate basis for damages that total $756,229.14 ($269,918.91 for Count II, $214,671.58 for Count IV, and $271,638.65 for Count V).

**V.   RECOMMENDATION**

Accordingly, it is respectfully **RECOMMENDED** that:

(1) Plaintiffs' motion for entry of default judgment (Doc. 14) be **GRANTED** to the extent set forth in this Report and Recommendation.

(2) The Clerk be directed to enter default judgment in favor of Pinnacle Towers, LLC and against airPowered, LLC on Count I of the Second Amended Complaint in the amount

of $223,657.09 and on Count III of the Second Amended Complaint in the amount of $231,026.44, for a total award of $454,683.53.

(3) The Clerk be directed to enter default judgment in favor of Crown Castle, LLC and against airPowered, LLC on Count II of the Second Amended Complaint in the amount of $269,918.91, on Count IV of the Second Amended Complaint in the amount of $214,671.58, and on Count V of the Second Amended Complaint in the amount of $271,638.65, for a total award of $756,229.14.

(4) The Clerk be directed to close this case and terminate any pending motions as moot.

**Recommended** in Ocala, Florida on January 15, 2016.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy